642 A.2d 653

**Antonio G. METELO, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (OLD ORIGINAL BOOKBINDERS RESTAURANT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 21, 1994.

Decided May 26, 1994.

Richard N. Shapiro, for petitioner.

Gayle B. Frink, Johnson, for respondent.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Antonio Metelo (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's [1] decision denying Claimant's petition for

1. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August

compensation benefits under The Pennsylvania Workmen's Compensation Act[2] (Act). We vacate and remand.

Claimant was employed by Old Original Bookbinders Restaurant (Employer) as a busboy. Claimant contracted hepatitis A and, as a result, he was unable to work as of September 9, 1990. Claimant filed a petition for benefits as of that date,[3] alleging that his disabling illness was work-related. Employer filed an answer denying Claimant's allegations.

Claimant testified on his own behalf at a hearing before Referee Martin Burman. Claimant stated that on August 11, 1990, while performing his duties at Employer's restaurant, he ate seafood prepared by Employer for a special party. Claimant asserted that as a result, he contracted hepatitis A, experiencing the fatigue and nausea associated with the disease about a month after eating the shellfish. In support of his position, Claimant also submitted a report from Dr. John F. Coffey, a physician who had treated him for hepatitis A, records from Methodist Hospital where he had been hospitalized for a week of treatment, and records from the Philadelphia Department of Public Health (Department of Health) which had investigated an outbreak of hepatitis A at Employer's restaurant. (R.R. at 6a, 8a, 9a–18a). Employer did not object to the admission of these exhibits into the record. (R.R. at 23a). Claimant also submitted the depositions of the owner and of the general manager of Employer's restaurant. Although Employer cross-examined Claimant at the hearing, it presented no witnesses of its own and submitted no documentary evidence.

Before Referee Burman issued a decision, the case was reassigned to Referee Irvin Stander, who made the following

31, 1993. Because this case was before the referee prior to the effective date of the amendments, however, we will refer to the referee as such and not as Workers' Compensation Judge.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

3. At the hearing before Referee Burman, Claimant indicated that after missing four weeks of work he was sufficiently recovered to return to work; Claimant modified his petition to one for a closed period. (R.R. at 21a).

findings of fact: [4]

1. On August 11, 1990, Defendant, Old Original Bookbinders Restaurant, employed Claimant, Antonio Metelo, as a busboy.

2. The Claimant alleges that while performing his duties, he consumed food prepared by his employer, which caused him to contract Hepatitis "A".

3. The Claimant testified that he worked in the Blacksmith Room on August 11, 1990. This was across the hall from a banquet. The Claimant alleged that he ate food from the banquet.

4. The owner of the restaurant testified that workers were not allowed to eat from a party.

5. On September 10, 1990, the Claimant told a restaurant employee that he was "sick".

6. The Claimant alleged that approximately one month after August 11, 1990, he began to experience fatigue and nausea.

7. Claimant last worked on September 10, 1990.

8. The Claimant presented the medical report of Dr. John F. Coffey. The report of Dr. Coffey indicated that the Claimant's illness was related to a food infection. It is not indicated in this report that the illness was work-related.

9. Based on the evidence and testimony presented, the Referee finds that the Claimant did not suffer a work-related injury.

(Referee's Findings of Fact, Nos. 1–9).

Based upon these findings, Referee Stander issued a decision in which he concluded that Claimant had failed to prove the occurrence of a work-related injury and he denied Claimant's petition for benefits. However, the referee made no credibility determinations on Claimant's testimony and made

4. We recognize that only the Referee Findings of Fact, Nos. 1, 5, 7 and 8 are actually findings; Referee Findings of Fact, Nos. 2, 3, 4 and 6, although characterized as "Findings of Fact" by the referee, are mere recitations of Claimant's evidence; and Referee Finding of Fact, No. 9 is a conclusion of law.

no reference to the hospital or Department of Health records, but denied benefits *solely* because Dr. Coffey failed to indicate in his medical report that Claimant's illness was "work-related." [5]   Upon appeal by Claimant, the Board affirmed.

On appeal to this court,[6] Claimant argues that 1) the referee erred in finding that Claimant did not suffer a work-related injury because Dr. Coffey's report, considered in conjunction with the Department of Health records, documents an obvious connection between Claimant's illness and his employment and 2) the referee's decision is unsupported by competent, substantial evidence.

■   In workmen's compensation cases, the claimant bears the burden of proving a causal relationship between a work-related incident and the claimed disability and *where that relationship is not obvious,* the claimant must establish the connection by unequivocal medical testimony.   *Vital Signs Institute, Inc. v. Workmen's Compensation Appeal Board (Burke & H.C.),* 114 Pa.Commonwealth Ct. 191, 538 A.2d 617 (1988).   (Emphasis supplied).   Claimant maintains that the causal relationship is obvious here.

■   An obvious relationship exists where the claimant's

5.  In the relevant parts of his report, Dr. Coffey wrote:
    He [Claimant] presented with severe symptoms and signs of hepatitis A infection with markedly abnormal lab tests.
    The enclosed hospital summary gives details of the clinical course.  I understand that there had been several cases of jaundice at his place of employment around the time he became ill.  I notified the city health authority during his hospital stay and was told that they are aware of this.
    . . . .
    Hepatitis A is a hygiene related disease and it is reasonable to conclude that Mr. Metelo's illness was related to food infection as in a restaurant.  Most cases of hepatitis A in Philadelphia in my experience are related to restaurant acquired disease.
    (R.R. at 6a).

6.  Our scope of review is limited to determining whether constitutional rights have been violated, whether the referee committed an error of law, or whether any necessary findings of fact were not supported by substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

injuries [7] immediately and directly *or naturally and probably* result from a work incident; in such cases, the fact finder is not required to depend alone, or at all, upon medical testimony to find the causal connection. *Yellow Cab Co. v. Workmen's Compensation Appeal Board (Sisco)*, 37 Pa.Commonwealth Ct. 337, 390 A.2d 880 (1978); *Workmen's Compensation Appeal Board (Pryce) v. Bethlehem Mines*, 22 Pa.Commonwealth Ct. 437, 349 A.2d 529 (1975).

We have often recognized an obvious causal connection between a work incident and injury where the onset of pain immediately and directly followed the incident.[8] We have also held that similar recognition must be given in cases where the disability is the natural and probable consequence of an injury, although the disability is not immediately manifested. *Yellow Cab; Pryce.* "[U]nequivocal medical testimony is not necessary to establish what is apparent from the chain of events." *Yellow Cab* at 341, 390 A.2d at 882. Here, although the disability from hepatitis A cannot be said to immediately result from eating shellfish because manifestation of the illness requires an incubation period, the causal relationship is nonetheless obvious where the overwhelming evidence indicates that the disability is the natural and probable result of

7. The term "injury" has been broadly defined to encompass all work-related harm, including

such disease or infection as naturally results from the injury ... [and] shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon ... [and in] 'its common and approved usage [the term] extends to and includes any hurtful and damaging effect which may be suffered by anyone.'

*Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company)*, 514 Pa. 450, 457, 525 A.2d 1204, 1209 (1987) (emphasis in original omitted).

8. *See, e.g., Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979) (pain in back while attempting to unload a stack of bakery pans from a truck); *McGarry v. Workmen's Compensation Appeal Board (Morrissey)*, 146 Pa.Commonwealth Ct. 594, 606 A.2d 648 (1992), *petition for allowance of appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993) (pain in back after shoveling dirt and lifting heavy objects); *Sacks v. Workmen's Compensation Appeal Board (Sacks)*, 43 Pa.Commonwealth Ct. 259, 402 A.2d 293 (1979) (severe pain in knee and foot after lifting a student out of a wheelchair).

the exposure to the disease.[9]  *Borello v. Unemployment Compensation Board of Review,* 490 Pa. 607, 417 A.2d 205 (1980). In *Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Wallet),* 140 Pa.Commonwealth Ct. 620, 625, 594 A.2d 826, 828 (1991), we held, "that persons exposed to a serious risk of contracting a disease which is commonly known to be highly contagious/infectious and potentially deadly, have been "injured" for the purpose of receiving compensation under the Act."  We based this holding on the "real, immediate, and serious risk of infection" which is the natural and probable result of such exposure.

At the hearing before Referee Burman, Claimant introduced medical exhibits from Dr. Coffey, Methodist Hospital and the Department of Health.  In his report, Dr. Coffey stated that Claimant had presented himself for treatment on September 12, 1990 with a severe case of hepatitis A infection.  Dr. Coffey expressed a professional opinion that "it is reasonable to conclude that Mr. Metelo's illness was related to food infection as in a restaurant." (R.R. at 6a).  He went on to opine that "[m]ost cases of hepatitis A in Philadelphia in my experience are related to restaurant acquired disease." (R.R. at 6a).  The Methodist Hospital records noted that Claimant had no history of drug or alcohol abuse and no family history of hepatitis. (R.R. at 8a).  The records from the Department of Health listed the Claimant as one of twelve cases—five employees and seven guests—who had eaten food served at the August 11, 1990 party at Employer's restaurant and who

9. We have recognized the concept of disease being the natural and probable consequence of exposure to it in the context of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1208(m).  Similarly, we have recognized that where persons in certain occupations are exposed to a serious risk of contracting a highly contagious disease, they are entitled to a statutory presumption under section 108(m) of the Act, 77 P.S. § 27.1(m), that they contracted the disease during the course of employment. *Browning–Ferris v. Workmen's Compensation Appeal Board (Jones),* 151 Pa.Commonwealth Ct. 529, 617 A.2d 846 (1992).  Additionally, we have held that such workers, once exposed, have been "injured" within the meaning of the Act by the risk of infection, and the causal connection between such a person's injury and work was "obvious." *Jackson Township Vol. Fire Co. v. Workmen's Compensation Appeal Board (Wallet),* 140 Pa.Commonwealth Ct. 620, 594 A.2d 826 (1991).

subsequently suffered from hepatitis A. (R.R. at 9a–17a). The Department of Health identified all twelve cases as manifesting an onset of symptoms between September 3, 1990 and September 28, 1990 and all, therefore, traceable to that event.[10] (R.R. at 9a–10a, 13a–14a, 17a). The Department of Health noted that "[n]o spread beyond that occurring at the event was suspected," finding no outbreak other than that connected with Employer's location. (R.R. at 12a). In addition to this evidence, Claimant testified that he never had hepatitis before and that during the relevant period, he ate seafood only at Employer's restaurant. (R.R. at 30a).

■ The weight to be given evidence and the credibility to be afforded witnesses are within the province of the referee. *Borello.* Here, Claimant presented evidence which, if believed, would be sufficient to establish a causal connection between Claimant's eating shellfish at work and his disabling illness, particularly where Employer has produced no evidence of any other possible source.[11] However, Referee Stander made no findings of fact concerning the Department of Health report documenting the hepatitis A outbreak, the Methodist Hospital records of Claimant's disease, nor whether there was evidence of any off-work source of infection. Further, the referee made no credibility determinations. Because it is impossible for a reviewing court to decide whether or not the proper law has been applied when the referee fails to make findings upon crucial issues, we must remand the case. *Negron v. Workmen's Compensation Appeal Board (United Store Fixture Mfg. Co.),* 80 Pa.Commonwealth Ct. 258, 471 A.2d 587 (1984).

■ If on remand, after determining the credibility of witnesses and the weight to be assigned to the evidence, the

10. The Department of Health referred to the time period as "a single incubation period" which indicated "a common-source outbreak." (R.R. at 9a).

11. Indeed, just prior to the close of Claimant's testimony, Referee Burman commented that "[i]f you read the exhibits, it's pretty clear that he [Claimant] picked it [hepatitis A] up at the [Employer's] restaurant." (R.R. at 44a).

referee determines that 1) Claimant was exposed to the infectious disease at work; and 2) there is no credible evidence of any off-work exposure that, given the incubation period, could have resulted in the disease, then the referee must conclude that Claimant's disabling disease was the natural and probable result of his eating seafood at Employer's restaurant.[12]

Accordingly, we vacate and remand.[13]

## ORDER

AND NOW, this 26th day of May, 1994, the order of the Workmen's Compensation Appeal Board, dated July 7, 1993, is vacated and this case is remanded to the Board to remand to the referee for additional findings of fact and conclusions of law not inconsistent with this opinion.

Jurisdiction relinquished.

NARICK, Senior Judge, dissenting.

I respectfully dissent.

Although I agree that Claimant's illness was related to a food infection, the Claimant has not met his burden that his illness was work-related. Dr. Coffey's report was no help to the Claimant's burden because the doctor concluded that the illness was not work-related. It is speculative as to Claimant's source of food-related infection since the Claimant ingested food from various sources during relevant period. Further, it is presumptive to assume that the referee did not make credibility determinations relating to various reports and records of an outbreak of hepatitis. The referee specifically, in his finding of fact, stated:

12. In a factually similar Oregon workmen's compensation case where a claimant's hepatitis symptoms appeared within the incubation period for the disease after the incident of exposure at the workplace and where there was no evidence of any off-work exposure, the court held that the claimant had sufficiently established medical and legal causation. *Moore v. Douglas County and AIF Corp.*, 92 Ore.App. 255, 757 P.2d 1371 (1988).

13. Because the first issue raised by Claimant is dispositive of this case, we need not address his second issue.

9. Based on the evidence and testimony presented, the Referee finds that the Claimant did not suffer a work-related injury.